IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| STEVE MERRITT, individually, and on behalf of all others similarly situated, ) ) ) | |
| Plaintiff, ) ) | No. 16-cv-11146 |
| vs. ) ) | Judge Virginia M. Kendall |
| HELLER AND FRISONE, LTD., ) ) | |
| Defendant. ) | |

**PLAINTIFF'S PETITION FOR AN AWARD OF ATTORNEY'S FEES AND COSTS**

In his Complaint, Plaintiff alleged that Defendant violated the Fair Debt Collection Practices Act ("FDCPA")—codified as 15 U.S.C. § 1692, *et seq.*—when it sent him a letter seeking to collect a debt ("Debt") on behalf of the City of Chicago for the outstanding balance of an allegedly unpaid water bill for his property ("Property") located at 8006 South Carpenter Street, Chicago, Illinois. *See generally*, Complaint.

The FDCPA allows Plaintiff's counsel to recover for their work in this action. Section 1692k provides that "any debt collector who fails to comply with any provision of this subchapter with respect to any person" is liable, inter alia, for "in the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorneys' fee as determined by the court." 15 U.S.C. §1692k(a)(3). To date, Plaintiff's counsel have incurred $55,473.25 in compensable fees plus $678.00 in costs. The fees and costs incurred by Plaintiff's counsel in litigating this case were incurred in the course of performing the following tasks:

**Pre-Complaint Legal and Factual Investigation** — Plaintiff's Counsel began conducting a factual and legal investigation of Plaintiff's claims in September 2016. This

investigation included an analysis of the collection letter at issue, the potential claims which could be brought, the potential for proceeding on a class-wide basis, analysis of the effect of a debt collector's failure to disclose to debtors that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose, as well as applicable federal and Illinois statutes, regulations, and case law and the elements and potential defenses for each of the proposed claims. Once the initial factual and legal research had been completed, Plaintiff's counsel drafted, prepared, and filed the Complaint and Motion for Class Certification, engaging in correspondence with Plaintiff at the inception of the case and throughout.

**Defendant's Motion to Dismiss the Complaint** — Defendant filed a Motion to Dismiss the Complaint wherein Defendant argued that Plaintiff's debt falls outside the scope of the FDCPA because the Plaintiff's property's water services were not for Plaintiff's personal, family, or household use. Rather, Defendant argued that since the property was listed as an "investment property" on Plaintiff's bankruptcy schedules, the debt is a business debt, and not a consumer debt covered by the FDCPA. Plaintiff's counsel thoroughly researched the law regarding this argument, and presented compelling legal arguments demonstrating that the business or consumer nature of a debt is determined by the transaction out of which the obligation to repay arose, not the obligation itself. Plaintiff's counsel further researched and argued that, even if Plaintiff's debt did not arise out of Plaintiff's purchase of the property, the FDCPA does not mandate that Plaintiff must have incurred the debt for his direct personal, family, or household use; rather, the personal, family, or household purpose of a debt depends upon the person or people that use it, even if they were for a tenant's personal use.

Defendant filed a reply brief that raised issues for the first time, as Defendant attached one of Plaintiff's subsequent mortgage documents and attempted to mislead the court by arguing

that Plaintiff made admissions in it that would defeat his cause of action against Defendant. Plaintiff's counsel was forced to seek leave to file a Sur-Reply to address the misleading argument, which the court granted, and Plaintiff's counsel drafted and filed the Sur-Reply.

In April 2017, the court agreed with Plaintiff's counsel's analysis, and denied Defendant's Motion to Dismiss.

**Discovery** — Shortly after the Court denied the Motion to Dismiss, Plaintiff's counsel drafted and served interrogatories, document requests, and requests to admit facts on Defendant. Defendant responded to the discovery requests in May 2017. Plaintiff's counsel analyzed the discovery responses, and the parties began discussing settlement the following month.

**Settlement Negotiations** — After Defendant responded to plaintiff's written discovery requests, it became apparent that Defendant's net worth would not support a class-wide settlement of the claims in this case. Accordingly, in June 2017, the parties started discussing settlement of Plaintiff's individual claim, without prejudice to the rights of the putative class members. The following month, Defendant made an offer of judgment of Plaintiff's individual claim, which Plaintiff accepted. The court entered judgment on August 15, 2017 in favor of Plaintiff in the amount of $1,001.00 plus reasonable attorney's fees and costs.

I. **The Parties' Meet and Confer Regarding Plaintiff's Request For Attorney's Fees and Costs.**

On August 16, 2017, the court entered an order directing the parties to meet and confer on the award of attorney's fees and costs to Plaintiff on or before August 29, 2017. The court further ordered that "if the parties fail to agree upon the amount of fees to be awarded, then the Plaintiff shall submit his fee petition and the defense shall file objections on or before September 19, 2017." (Dkt. #41). On August 26, 2017, Plaintiff's counsel tendered to Defendant's counsel their itemized time and expenses sought, along with supporting Declarations of counsel. On

August 29, 2017, counsel for the parties had their meet and confer.

Defendant's counsel stated that they object to the time and expense entries on the grounds that: (1) the class-related time should be disallowed because this was an individual recovery, (2) there are duplicate billing entries because the same *description* of work performed appeared on different days, (3) one partner in each of the two law firms representing Plaintiff worked on the case, and only one partner *in total* is allowed to do work, (4) every attorney's hourly rates are too high, and (5) the amount of attorney's fees sought is disproportional to Plaintiff's recovery.

Following the meet and confer, Plaintiff's counsel removed from their invoices the itemized time entries relating to Plaintiff's Motion for Class Certification. Plaintiff will address Defendant's remaining objections below.

## II.     There Are No Duplicate Billing Entries.

Defendant asserts that the Zimmerman Law Offices, PC invoices contained duplicate billing entries on September 17, 21 and 23, 2016. Specifically, the following time entries appear on some of those dates:

> "Review and analyze documents from co-counsel regarding potential case"
> "Draft and review emails to and from co-counsel regarding potential case".

*See* itemized time and expenses attached as Exhibit 3 to Declaration of Thomas A. Zimmerman, Jr. in support of Plaintiff's Petition for Attorney's Fees and Costs ("Zimmerman Decl."), attached hereto as Exhibit A.

In fact, those time entries in September 2016 represent distinct work that was performed on *each* day. Plaintiff's counsel were reviewing documents and corresponding with each other as part of their investigation into Plaintiff's potential claims in this matter. This is required as part of their obligation to perform a reasonable investigation into the merits of a claim before bringing it. During the meet and confer, Plaintiff's counsel tried to explain this, but defense

counsel argued that these were duplicate billing entries because each of the billing entries used the same words in the description.

Plaintiff's time entries provide the requisite detail because they "show the date the services were rendered, a description of the services, the hours, the fee rate, and the total dollar amount." *McNiff v. Mazda Motor of Am., Inc.*, 384 Ill.App.3d 401, 407 (4th Dist. 2008). That is all that is necessary for the court to determine whether the fees were reasonably incurred in this case. *Id.* (rejecting defendant's argument that the description of services should have been more detailed).

### III. It is Appropriate for One Partner in Each of the Two Law Firms Representing Plaintiff to Work on the Case.

Defendant complains that it is improper for two partners to work on this case, and that only one partner *in total* was allowed to do work and associate attorneys should have been doing everything else. Plaintiff was represented by two law firms in this case. One partner from *each firm* worked on the case. Associate attorneys performed the rest of the work. Defendant does *not* complain about any double billing between the two partners.

Defendant cited no law to support its argument that when a party is represented by more than one law firm, the law firms must select one partner among all of the law firms who will work on the case. Plaintiff is not aware of any such authority, either.

In fact, quite the opposite is true. Tasks performed by Thomas A. Zimmerman, Jr. ("Zimmerman") and Rusty Payton ("Payton") are *not* unreasonable simply because they are experienced consumer law attorneys. *See Chaid v. Glickman*, No. C98-1004 WHO JCS, 1999 WL 33292940, at *14 (N.D. Cal. Nov. 17, 1999) (performance of tasks by experienced counsel are efficient because it saves time).

The court follows other courts that have rejected the argument that experienced attorneys should be penalized for doing their own work rather than delegating it to junior lawyers. *Chaid v. Glickman*, No. C98-1004 WHO JCS, 1999 WL 33292940, at *14 (N.D. Cal. Nov. 17, 1999) (citing *Society for Goodwill to Retarded Children v. Cuomo,* 574 F.Supp. 994 (E.D.N.Y. 1983) (Weinstein, C.J.)). In *Cuomo,* the court noted that "'with expert knowledge' the performance of tasks by more experienced or skilled practitioners actually reduced the costs of litigation." *Cuomo*, 574 F.Supp. at 1000; *see also Muehler v. Land O Lakes, Inc.,* 617 F.Supp. 1370, 1379 (D.Minn.1985) (noting that "it would perhaps be more cost efficient if all senior partners engaged in research on the cases they are litigating. That added efficiency underlies the rationale for paying senior partners at a higher rate.").

In *Roberts v. National Bank of Detroit,* 556 F.Supp. 724, 728 n. 1 (E.D.Mich.1983), the court declined to pay counsel a lower rate for work that could have been done by associates because "the attorneys here are not involved in large law practices which allow them to send routine work to associates."

Such is the case with Plaintiff's counsel's law firms, which (unlike Defendant's law firm) are not large law practices.

**IV.   The Attorney's Hourly Rates Are Fair and Reasonable.**

The hourly rates of Plaintiff's counsel, and a detailed listing of their lodestar, are set forth in the exhibits attached to their Declarations. *See* Zimmerman Decl., <u>Exhibit A</u>, and Declaration of Rusty Payton in Support of Plaintiff's Petition for Attorney's Fees and Costs ("Payton Decl."), attached hereto as <u>Exhibit B</u>.

In computing the lodestar, the hourly billing rate applied is the hourly rate that is normally charged in the community where counsel practices, *i.e.*, the "market price." *See, e.g.,*

*Blum v. Stenson*, 465 U.S. 886, 895 (1984).

Approval of attorneys' hourly rates in class action settlements is an appropriate factor to consider in determining market rates because courts considering awards in class action settlements "must do their best to award counsel the market price for legal services, in light of the risk of nonpayment and the normal rate of compensation in the market at the time." *Schulte v. Fifth Third Bank*, 805 F.Supp.2d 560, 597 (N.D. Ill. 2011) (citing *In re Synthroid Mktg. Litig.*, 264 F.3d 712, 718 (7th Cir.2001) ("*Synthroid I* ")).

The hourly rates utilized by Plaintiff's counsel are comparable to rates charged by attorneys with similar experience, skill, and reputation, for similar services in the Chicago legal market and comparable markets nationwide.

The attached declarations highlight the skill, experience, and reputation of Zimmerman and Payton. For example, Zimmerman has practiced law for over 20 years and has obtained multi-million dollar jury verdicts in class action, corporate, commercial, medical malpractice, consumer fraud, general civil, product liability, toxic tort, and other complex litigation. (*See* Zimmerman Decl., <u>Exhibit A</u>; *see also* Exhibit 1 to the Zimmerman Decl., the Firm Resume). He has been lead counsel in national and state-wide class action litigation, and has handled other multi-party litigation against large corporations.  In 2000, he was voted one of the Top 40 Illinois Attorneys Under the Age of 40.  In 2003, the Illinois Supreme Court appointed Zimmerman to the Review Board of the Attorney Registration and Disciplinary Commission ("ARDC"), and he served in that capacity until 2011.  In 2013, the ARDC appointed Zimmerman as Special Counsel, wherein he conducts independent investigations in matters involving allegations of misconduct against attorneys associated with the ARDC.  Additionally, the Illinois Governor appointed Zimmerman to the Illinois Courts Commission.  Zimmerman is currently the chair of

the Clerk of the Circuit Court of Cook County Attorney Advisory Committee, and was formerly co-chair of the Clerk of the Circuit Court Transition and Strategic Planning Public Policy Subcommittee. Zimmerman is a member of the Illinois Trial Lawyers Association, where he serves on various committees. He is also a member of the American Association for Justice. In 2000, he was appointed to the Illinois Trial Lawyers Association Board of Advocates. *Id.*

Similarly, Payton has significant experience in representing individuals in consumer litigation. For over 20 years, he has practiced extensively in representing individuals in bankruptcy, debt collection, foreclosure defense, RESPA/TILA, prosecution of FDCPA and state law consumer claims. (*See* Payton Decl., Exhibit B). He represents clients in state and federal trial and appellate in multiple states. He is admitted to practice law in Illinois, and other states on a case-by-case basis, and is admitted to practice before multiple federal court of appeals, and federal district courts. Based on his demonstrated experience and ability, he was appointed to the federal court trial bar. *Id.*

As set forth in their respective Declarations, the hourly rates for the attorneys at their law firms have been approved by numerous federal and state courts as reasonable; their rates are in accord with hourly rates of comparable attorneys practicing consumer litigation in the Chicago market; and their rates are *less than* the hourly rates of attorneys practicing for the same length of time according to the Laffey Matrix. *See* Zimmerman Decl., Exhibit A; Payton Decl., Exhibit B. For the sake of brevity, the support for Plaintiff's counsel's hourly rates will not be restated here, as it is set forth in great detail in the attached Declarations.

**V.     Attorney's Fees Are Not to be Analyzed in Proportion to Plaintiff's Recovery.**

Plaintiff obtained the *full amount* of his injury, and the *maximum amount* that he could recover under the FDCPA. *See* 15 U.S.C. § 1692k(a)(2)(A) ("in the case of any action by an

individual, such additional damages as the court may allow, but not exceeding $1,000"). Plaintiff obtained 100% of the amount he could recover under the FDCPA. Thus, Plaintiff is the prevailing party and, pursuant to 15 U.S.C. § 1692k(a)(3), he is entitled to reasonable attorney's fees and costs.

The U.S. Supreme Court explicitly rejected a proportional reduction in fees based on the dollar amount recovered. *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986).

Similarly, the Seventh Circuit has "repeatedly rejected the notion that [attorneys'] fees must be calculated proportionally to damages." *Estate of Enoch ex rel. Enoch v. Tienor*, 570 F.3d 821, 823 (7th Cir. 2009). "Because Congress wants even small violations of certain laws to be checked through private litigation and because litigation is expensive, it is no surprise that the cost to pursue a contested claim will often exceed the amount in controversy." *Anderson v. AB Painting & Sandblasting, Inc.*, 578 F.3d 542, 545 (7th Cir. 2009). *See also Connolly v. National School Bus Service, Inc.*, 177 F.3d 593, 597 (7th Cir. 1999) ("Nor has this Court ever held that an attorney's fee award is unreasonable simply because it exceeds by some multiple the amount recovered by the plaintiff, . . .").

The purpose of fee-shifting is to ensure that meritorious claims are not abandoned because of the prospect of obtaining minimal monetary damages. *See Mendez v. Town of Cicero*, 2016 IL App (1st) 150791, ¶ 18, 57 N.E.3d 614, 619, *appeal denied*, 60 N.E.3d 874 (Ill. 2016) (awarding the plaintiff $330,412.09 in attorney fees and costs under the fee-shifting provision of the Whistleblower Act even though the plaintiff was granted nominal or *de minimis* relief.).

For example, in *Totz v. Continental Du Page Acura*, the defendant argued that the $17,625 attorney's fee award to the plaintiff under the Illinois Consumer Fraud Act ("CFA") was excessive when compared to the $407.50 compensatory damage award. 236 Ill.App.3d 891, 910

(2nd Dist. 1992). The appellate court rejected defendant's argument. The *Totz* Court held that under the CFA, a disproportionate award of attorney's fees is allowed under Illinois law, and such an award, in fact, encourages the public policy interests that the CFA was designed to promote. *Totz*, 236 Ill.App.3d at 910.

The FDCPA recognizes the fact that actual damages are often small, but that a fee-shifting provision will ensure that consumers have an opportunity to vindicate their rights in court. Therefore, under statutes designed to further this important public policy, there is no bright-line proportionality rule. *See also Clayton*, 2013 IL App (4th) 120717, ¶ 32 (affirming an award of attorney fees in the amount of $32,306.25 and costs of $680.67 on a judgment of $5,994.32 under the Illinois Consumer Fraud Act); *Demitro v. General Motors Acceptance Corp.*, 388 Ill.App.3d 15, 25 (1st Dist. 2009) (affirming an award of $53,101 in attorney's fees and $1,151.50 in costs on a judgment of $7,560.06 under the Illinois Consumer Fraud Act).

Defendant refuses to acknowledge its role in increasing Plaintiff's attorney's fees. "Those who elect a militant defense are responsible for the time and effort they extract from their opponent." *Copeland v. Marshall*, 641 F.2d 880, 904 n. 53 (D.C. Cir. 1980). "A defendant who elects to aggressively litigate a claim under the Act is not well-positioned to criticize the correspondingly greater fees a plaintiff is required to incur to pursue her claims." *Mendez v. Town of Cicero*, 2016 IL App (1st) 150791, ¶ 23, 57 N.E.3d 614, 621, *appeal denied*, 60 N.E.3d 874 (Ill. 2016). A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 581, n.11 (1986). *See also Barrow v. Falck*, 977 F.2d 1100, 1104 (7th Cir. 1992) ("Section 1988 helps to discourage petty tyranny. Awarding the full cost of litigation, which looks excessive in the single case, is sensible because it aids in the enforcement of rules of law. . . . If as the

defendants say 'only' $3,700 was at stake, why the tenacious resistance?).

For the foregoing reasons, the Court should find that $55,473.25 in attorney's fees plus $678.00 in costs is fair and reasonable and award that amount to Class Counsel.

STEVE MERRITT,

By: /s/ Thomas A. Zimmerman, Jr.
Thomas A. Zimmerman, Jr.
*tom@attorneyzim.com*
Matthew C. De Re
*matt@attorneyzim.com*
Maebetty Kirby
*maebetty@attorneyzim.com*
ZIMMERMAN LAW OFFICES, P.C.
77 West Washington Street, Suite 1220
Chicago, Illinois 60602
(312) 440-0020 telephone
(312) 440-4180 facsimile
www.attorneyzim.com

Rusty A. Payton
*payton@paytondann.com*
PAYTONDANN
115 S. LaSalle Street, Suite 2600
Chicago, Illinois 60603
(312) 702-1000

Counsel for the Plaintiff